Rich, Judge,
 

 delivered the opinion of the court:
 

 This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 13-21 of appellant’s application Ser. No. 297,869, filed July 9, 1952 for “Container-Dispenser for Cosmetics in Solid Stick Form.” No claims have been allowed. Claim 13 is the main claim, all others being dependent.
 

 The references relied on are:
 

 Root, 1,461,680, July 10,1923.
 

 Gleeson, 1,953,296, April 3,1934.
 

 Anderson, 2,506,984, May 9,1950.
 

 Mahruki, 2,629,123, February 24,1953.
 

 Gahide (French), 714,968, September 14,1931.
 

 Claim 13 reads:
 

 13. A liquid-tight and air-tight container-dispenser for cosmetics in solid Stick form and of the volatile variety comprising a tubular
 
 body
 
 with a bottom wall, an anteriorly threaded
 
 follower
 
 arranged within the body and having a slidable but nonrotatable engagement therewith, an exteriorly
 
 threaded stem
 
 also arranged within the body and having cooperative engagement with the follower, said stem being rotatably mounted at its lower end on the bottom wall of the body, a
 
 rotatable hnob
 
 arranged outside of the body at the base of the container-dispenser and secured non-rotatably to the stem, a sealing
 
 washer within
 
 the body positioned against the bottom wall of the body and through which the stem also rotatably extends, and a second sealing
 
 washer outside
 
 of the body, between the rotatable knob and the bottom wall of the body. [Emphasis ours.]
 

 Appellant’s invention is a combination of mechanical elements constituting a mechanism superficially resembling the common lipstick holder except that the cosmetic body of sticklike form has a follower embedded in its lower end and is moved by turning a knob attached to the threaded stem which is disposed axially of and inside the stick of cosmetic. The cosmetic can be a cologne or perfume stick, a deodorant stick, shaving stick, cream stick or the like. It is said that such
 
 *911
 
 cosmetics contain volatiles and an object is to provide a container which is sealed against their escape.
 

 The sole issue is patentability over tbe above cited art and appellant’s plea is that the claims should be allowed because they are not anticipated by any one reference, because they are of a very limited nature, and because they represent “some advance — even though it may be slight — in a very crowded art.”
 

 Appellant acknowledges that Root, which shows a metal lipstick container, “does disclose applicant’s general structure but lacks applicant’s double seal at the bottom of the container, as well as applicant’s molded plastic materials.”
 

 As far as claim 13 is concerned, the material of which the device is made is not specified and patentability of that claim cannot be predicated on the use of plastic. As to those claims limited to plastic, dependent claims 14 and 15, Anderson shows a similar container of molded plastic and applicant concedes that the plastics he uses are well known, “but,” he says, “applicant has had to select them for his particular purpose.” Mere selection of known plastics to make a container-dispenser of a type made of plastics prior to the invention, the selection of the plastics being on the basis of suitability for the intended use, would be entirely obvious; and in view of 35 U.S.C. 103 it is a wonder that the point is even mentioned.
 

 We shall now consider the double seal which appellant urges as the feature which makes claim 13 patentable. The bottom of the container body is a thin circular wall with a hole in the middle through which the threaded stem passes. To make an allegedly vapor tight seal where the stem passes through the bottom, a cork washer is placed on the inside, around the stem, and a felt washer is similarly placed on the outside, between the body and the rotatable knob. The specification says as to each of these washers that it may be made of “other suitable material” than the one named and no claim says what they are made of. The stem has a boss that bears on the inside washer and when the threaded stem is swaged into the knob, the two washers are squeezed together with the bottom wall of the body sandwiched between them. Although the specification does not mention it, the outside felt washer is said in appellant’s brief to reduce the friction between the body and the knob so that the knob turns freely and this would obviously be so if, indeed, that is not its primary function. But ignoring the latter function, the problem is simply one of sealing a shaft where it passes through a wall so that liquid or vapor will not escape around it. Root, to keep his container from leaking, provides a soft felt washer, around a threaded stem, and disposed on the inside of the container. Mahruki provides a washer of rubber or like material
 
 *912
 
 around a rotating shaft between a corresponding body and knob, which may, incidentally, be made of plastic, to provide a seal on the outside. We see nothing unobvious to one of ordinary skill in this art in using both inside and outside sealing washers if he finds either one of them alone to be insufficient.
 

 Having disposed of the arguments based on the use of the double seals and the use of plastic materials, we have answered appellant’s arguments as to the patentability of claim 13. We are not persuaded that there was error in its rejection for the reasons of record. We have also disposed of claims 14 and 15.
 

 Claim 16 adds the feature of clamping the inside washer against the bottom wall of the body by a disc-like collar on the stem. The drawing shows it to be a flange or enlargment on the boss at the bottom of the threaded stem. Beside being of the view that it is an obvious and ancient mechanical expedient, we agi’ee with the board that it is taught by Gleeson to use a collar surrounding the stem to press a spring washer against the bottom of the case in a device of this type. Claim 17 calls for a recess in the body in which the outside sealing washer is positioned. The limitations of this claim are shown in Mahruki and are wanting in novelty.
 

 Claim 18 reads:
 

 A container-dispenser according to claim 13, wherein the follower is of skeleton form to embed itself in the stick when the stick material is poured in hot liquid state into the body for casting.
 

 The board accurately describes the “skeleton form” of the follower as “an annular ring secured to a screw threaded axial hub by two radial arms leaving passages between the rim and other parts.” The corresponding part in Boot is a cup to hold the base of the stick which he molds in his container and is quite unlike appellant’s follower. The board made the limitation “skeleton form” read on a cup by the following reasoning:
 

 We are * *
 
 *
 
 of the opinion that this expression does not require an apertured ■structure such as herein, since the carapace of turtles and other related animals is an exterior skeleton of cup form and thus Root meets the claims [sic] as drafted.
 

 We will not approve this rejection. We feel that “skeleton” must be construed in the engineering sense in which appellant used it rather than according to the irrelevant terminology of zoology as related to the genus Chelonia. The claim does not reasonably convey the meaning the board attempts to ascribe to it. Applicants have the long-recognized right to describe their structures in such language as they choose so long as ordinary meanings are not distorted and if they make themselves clear. Appellant’s specification makes the term
 
 *913
 
 “skeleton” entirely clear and it does not include cups. The board’s second ground of rejection is that Gahide shows an apertured lift plate in his shaving stick holder. While it is true he shows a plate having some small holes in it, he does not suggest the structure or the functioning of it as set forth in claim 18. The solicitor says applicant’s structure would result from substituting Gahide’s follower in Eoot’s container but there is nothing in either patent to suggest making such combination. On the contrary, to use an aper-tured or skeletonized follower in place of Eoot’s cup would defeat his purpose in causing his soft felt washer under the cup to become soaked with hot liquid lip-stick. He wants no cosmetic below his cup if possible. The rejection of claim 18 will be reversed.
 

 Claim 19 is another dependent claim calling for a boss on the lower end of the threaded stem to space the follower in its lowest position a substantial distance from the bottom of the body. This is provided, according to the specification, so that when the melted contents are poured in and around the skeleton follower the material will solidify around it and embed it about the end of the stick. Applicant says this is an important feature which insures the stick will be both propelled and repelled and the specification emphasizes this. The rejection is on Eoot in view of Gleeson. The board admitted that Eoot does not anticipate but said that Gleeson shows the boss. He does show a boss about half the length of applicant’s but not for applicant’s purpose and not in combination with a skeleton follower. The inventive concept of using the combination of boss and skeleton follower, for use with a poured cosmetic stick is not to be found in either of these references but neither is it to be found in claim 19. The rejection of this claim is affirmed since the mere use of a boss at the end of a screw to stop the follower does not define anything patentable over Gleeson.
 

 Claims 20 and 21 are directed to the mechanical expedients of swaging the stem into a hole in the knob and of making this joint of square cross-section. They were properly rejected on art showing recognized mechanical equivalents.
 

 As claim 18 is dependent on rejected claim 13 it can, of course, be allowed only in independent form. It is not our opinion that the patentability of such an independent claim would depend on the inclusion of the limitation now in claim 13 to two sealing washers, which we found not to impart patentability to claim 13.
 

 The decision of the board is
 
 affirmed
 
 as to the rejection of claims 13-17 and 19-21 but is
 
 reversed
 
 as to claim 18.
 

 Ktrepateick, J., dissents as to claim 18 and concurs as to the remaining claims.